# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

# THIS DOCUMENT IS CURRENTLY

# IN CAMERA DOCUMENT

# AND

# IS RESTRICTED FROM

# PUBLIC VIEWING

G–98 (02/09)                    **IN CAMERA DOCUMENT**

NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

*Attorneys for Relator*



# IN THE UNITED STATES DISTRICT COURT

# IN THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **CHARLES GONZALES,**<br><br>Plaintiffs,<br><br>v.<br><br>**VITAS HEALTHCARE CORPORATION**, a Florida corporation; and **VITAS HEALTHCARE CORPORATION OF CALIFORNIA**, a California corporation,<br><br>Defendants. | Case CV 12 0761 - R (PLAx)<br><br>**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT**<br><br>**DEMAND FOR JURY TRIAL** |

## [FILED IN CAMERA AND UNDER SEAL

## PURSUANT TO 31 U.S.C. § 3730(b)(2)]



LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**COMPLAINT**

Case 4:13-cv-00344-BCW   Document 19-2   Filed 04/04/13   Page 2 of 29

NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

*Attorneys for Relator*

**IN THE UNITED STATES DISTRICT COURT**

**IN THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **CHARLES GONZALES,** <br><br> Plaintiffs, <br><br> v. <br><br> **VITAS HEALTHCARE CORPORATION,** a Florida corporation; and **VITAS HEALTHCARE CORPORATION OF CALIFORNIA,** a California corporation, <br><br> Defendants. | Case No. **CV 12 0761 - R (PLAx)** <br><br> **COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT** <br><br> **DEMAND FOR JURY TRIAL** |

**[FILED IN CAMERA AND UNDER SEAL**

**PURSUANT TO 31 U.S.C. § 3730(b)(2)]**



DOCKETED ON CM

JAN 27 2012

BY _____ 200

# 1

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................. 1

II.   JURISDICTION AND VENUE ................................. 2

III.  PARTIES ..................................................... 2

IV.  OVERVIEW OF THE SCHEME ............................... 3

    A.    The United States Medicare System ..................... 3

    B.    Hospice Care ........................................... 4

V.    VITAS LOS ANGELES KNOWINGLY ENGAGED IN A
PATTERN AND PRACTICE OF FALSELY CERTIFYING
PATIENTS FOR MEDICARE HOSPICE BENEFITS ............ 7

VI.  EVIDENCE OF THE SCHEME ................................. 9

VII. CAUSES OF ACTION ........................................ 17

    FIRST CAUSE OF ACTION
    On Behalf of the United States
    Federal False Claims Act, Presenting False Claims
    31 U.S.C. § 3729(a)(1)(A) ................................ 17

    SECOND CAUSE OF ACTION
    On Behalf of the United States
    Federal False Claims Act, Making or Using False Records or
    Statements Material to Payment or Approval of False Claims
    31 U.S.C. § 3729(a)(1)(B) ................................ 17

    THIRD CAUSE OF ACTION
    (In the Alternative)
    On Behalf of the United States Federal False Claims Act,
    Retention of Proceeds to Which Not Entitled
    31 U.S.C. § 3729(a)(1)(G) ................................ 18

VIII. PRAYER FOR RELIEF ....................................... 19

DEMAND FOR JURY TRIAL ...................................... 21

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

COMPLAINT                                 i

Plaintiff UNITED STATES OF AMERICA ("United States"), by and through Relator CHARLES GONZALES, alleges as follows:

## I.   INTRODUCTION

1.     Relator Doctor Charles Gonzales ("Dr. Gonzales" or "Relator") brings this action on behalf of the United States to recover losses sustained by the Medicare Program as a result of the Los Angeles operations of Defendants VITAS HEALTHCARE CORPORATION and VITAS HEALTHCARE CORPORATION OF CALIFORNIA (collectively, "Defendants," "Vitas Los Angeles," or "Vitas"). Over the course of at least the past seven years, Vitas Los Angeles has defrauded the government by systematically falsely certifying that a large number of its patients are eligible for hospice care, when they are not.

2.     Vitas Los Angeles is the largest for-profit hospice care provider in Southern California. By systematically submitting false certifications and recertifications, Vitas Los Angeles has collected significant amounts of money from Medicare, padding its profits at the expense of taxpayers. Vitas Los Angeles purports to have hundreds of hospice appropriate patients at any given time in the Los Angeles area for whom it submits claims for reimbursement to Medicare. Many of these patients remain on hospice care for years, with little or no decline in heath, and require little in resources from Vitas.

3.     Relator Dr. Gonzales was employed by Vitas Los Angeles from 2004 to 2011. Dr. Gonzales possesses detailed and extensive information about Vitas Los Angeles' systematic and fraudulent certification and recertification of patients as eligible for hospice care. During his tenure he received constant and strong pressure from Vitas Los Angeles' management to certify and/or recertify patients as eligible for Medicare hospice care who were not eligible under the pertinent regulations and industry standards.

4.     Dr. Gonzales repeatedly disagreed with Vitas Los Angeles' fraudulent practices. As a result of his continued disagreement with management, Dr.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

COMPLAINT

1

Gonzales experienced retaliation and eventually left Vitas in May 2011.

5.     Over the past decade, Vitas Los Angeles has submitted thousands of false certifications of hospice eligibility to Medicare for patients in Los Angeles. Each of those false certifications has cost Medicare – and United States taxpayers – thousands of dollars in hospice benefits that should not have been paid.

6.     This is a *qui tam* action for violation of the federal False Claims Act (31 U.S.C. §§ 3150 *et seq.*), to recover the millions of dollars out of which Vitas Los Angeles has defrauded Medicare, in addition to treble damages, statutory penalties, and Relator's fees and costs. Non-public information personally known to Relator serves as the basis for this action. On information and belief, the United States had no knowledge of the scheme being perpetrated by Vitas Los Angeles, as detailed below, until January 2012.

## II.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over the claims raised in this complaint under 28 U.S.C. § 1331 as they arise under Federal law. This Court also has jurisdiction over this action pursuant to 31 U.S.C. § 3732, which confers jurisdiction for claims brought under the False Claims Act on the District Courts of the United States.

8.     Venue is proper pursuant to 31 U.S.C. § 3732(a), as all Defendants transact business in this District.

## III.     PARTIES

9.     The Plaintiff in this action is the UNITED STATES OF AMERICA ("United States") by and through Relator CHARLES GONZALES.

10.     Relator CHARLES GONZALES is a licensed physician, Board Certified in Hospice and Palliative Care, and former employee of Defendants, and is an original source of the information contained herein. Dr. Gonzales voluntarily provided the Government with the information contained herein before bringing this action.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

11.     Defendant VITAS HEALTHCARE CORPORATION is a Florida corporation which conducts business in Los Angeles County.

12.     Defendant VITAS HEALTHCARE CORPORATION OF CALIFORNIA is a California corporation which conducts business in Los Angeles County.

## IV.    OVERVIEW OF THE SCHEME

### A.    THE UNITED STATES MEDICARE SYSTEM

13.     Medicare is a federally-funded health care program that provides medical insurance coverage to qualified residents of the United States who are aged 65 and older, younger people with permanent or congenital disabilities, or those who meet other special criteria like the End Stage Renal Disease program. The vast majority of Medicare's costs are paid by United States citizens through their taxes. In addition to paying for medical expenses such as doctor visits and hospital stays, Medicare pays for what is known as hospice care for eligible Medicare recipients.

14.     Title XVII of the Social Security Act establishes the Medicare Program (technically, the "Health Insurance for the Aged and Disabled Program"). *See* 42 U.S.C. §§ 1397 *et seq.*

15.     The United States provides reimbursement for Medicare claims from the Medicare Trust Funds through the Centers for Medicare & Medicaid Services ("CMS"), which is the operating division of the United States Department of Health & Human Services ("HHS"). CMS, in turn, contracts out to Medicare Administrative Contractors ("MACs") to review, approve, and pay Medicare claims received from health care providers like Vitas.

16.     Payments are typically made directly to health care providers rather than the patient, as Medicare recipients routinely assign their right to payment to the health care provider, such as Vitas. Once a Medicare recipient assigns their right to payment to a provider, the provider then submits its bill directly to

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

COMPLAINT

Case 4:13-cv-00344-BCW   Document 19-2   Filed 04/04/13   Page 7 of 29

3

1 Medicare for payment.

2     17.    To bill Medicare, a provider must submit an electronic or hard-copy

3 claim form called a CMS-1500 form. When submitting the form, the provider

4 must certify that the services in question were "medically indicated and necessary

5 for the health of the patient."

6     18.    The CMS-1500 form requires the provider to state, among other

7 things, the procedure(s) for which it is billing Medicare, the provider number, the

8 identity of the patient, and a short narrative explaining the diagnosis and the

9 medical necessity of services that the provider rendered.

10     19.    All healthcare providers, including Vitas, must comply with all

11 applicable statutes, regulations, and guidelines in order to be reimbursed by

12 Medicare. Providers have a duty to have knowledge of the relevant statutes,

13 regulations, and guidelines regarding coverage for Medicare services. For

14 example, Medicare reimburses only reasonable and necessary medical services

15 furnished to beneficiaries and excludes from payment services that are not

16 reasonable and necessary. *See* 42 U.S.C. § 1395y(a)(1)(A); *see also* 42 C.F.R.

17 § 411.115(k). Providers must also assure that they provide medical services to

18 Medicare recipients "economically and only when, and to the extent, medically

19 necessary." 42 U.S.C. § 1320c-5(a)(1).

20     20.    Because it is not realistically feasible to review medical

21 documentation before paying each claim, MACs generally make payment under

22 Medicare based on the providers' certification on the Medicare claim form that the

23 services in question were "medically indicated and necessary for the health of the

24 patient."

25     **B.**    **<u>HOSPICE CARE</u>**

26     21.    Hospices aim to provide palliative care, as opposed to curative care,

27 to patients in the last six months of their lives. Palliative care is aimed at relieving

28 the pain, symptoms, and/or stress of terminal illness and includes a comprehensive

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

set of medical, social, psychological, emotional, and spiritual services provided to a terminally ill individual. Medicare recipients of palliative care agree to forego curative treatment of their terminal illness.

22. Pursuant to Medicare regulations, in order to be eligible to elect hospice care, an individual must be (1) entitled to Medicare and (2) certified as "terminally ill" in accordance with 42 C.F.R. § 418.22. *See* 42 C.F.R. § 418.20.

23. Under Medicare regulations, "terminally ill" means that a person "has a medical prognosis that his or her life expectancy is 6 months or less if the illness runs its normal course." *See* 42 C.F.R. § 418.3.

24. Hospice care is available to individuals for two initial ninety (90) day periods, followed by an unlimited number of sixty (60) day periods, provided that at the beginning of each period a physician certifies the individual's terminal condition in writing.

25. The first 90-day period must be certified by (a) the Medical Director of the hospice or a physician-member of the hospice inter-disciplinary group; and (b) the individual's attending physician, provided there is one. 42 C.F.R. § 418.22(c)(1). For subsequent periods, the only requirement is certification by one of those physicians. 42 C.F.R. § 418.22(c)(2).

26. The written certification must: (1) specify that the individual's prognosis is for a life expectancy of 6 months or less if the terminal illness runs its normal course; (2) contain clinical information and other documentation that supports the medical prognosis; (3) contain a brief narrative explanation of the clinical findings that supports a life expectancy of 6 months or less; and (4) be signed and dated by the physician(s). 42 C.F.R. § 418.22(b).

27. Based on the number of days and level of care provided, hospices are paid a per diem rate. 42 C.F.R. § 418.302. Medicare's requirements for coverage are:

> To be covered, hospice services must meet the following requirements. They must be reasonable and necessary for the

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**COMPLAINT**

Case 4:13-cv-00344-BCW   Document 19-2   Filed 04/04/13   Page 9 of 29

5

palliation and management of the terminal illness as well as related conditions. The individual must elect hospice care in accordance with § 418.24. A plan of care must be established and periodically reviewed by the attending physician, the medical director, and the interdisciplinary group of the hospice program as set forth in § 418.56. That plan of care must be established before hospice care is provided. The services provided must be consistent with the plan of care. A certification that the individual is terminally ill must be completed as set forth in section § 418.22.

42 C.F.R. § 418.200.

28.     To participate, hospices must maintain a clinical record with "correct clinical information" on each hospice patient. All entries in the clinical record must be "legible, clear, complete, and appropriately authenticated and dated . . ." 42 C.F.R. § 418.104.

29.     Local coverage determinations ("LCD") specify under what clinical circumstances a service is considered to be "reasonable and necessary" and therefore covered by Medicare. MACs issue LCDs to provide guidance to the public and medical community within their jurisdictions. MACs develop LCDs by "considering medical literature, the advice of local medical societies and medical consultants, public comments, and comments from the provider community." Medicare Program Integrity Manual, Chapter 13 § 13.1.3.

30.     Hospice providers in Los Angeles currently receive approximately **$5,300, per patient, per month** (moreover, if a patient is deemed to require "Continuous Home Care," i.e., 24-hour care, the Medicare hospice reimbursement rate for Los Angeles is over **$1,000 per day**). A false certification or recertification is thus very costly to taxpayers, and very profitable for Vitas Los Angeles. Patients who should not qualify for hospice are especially profitable, because they typically require less care, and the expenditure of fewer resources.

/ / /

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

# V. VITAS LOS ANGELES KNOWINGLY ENGAGED IN A PATTERN AND PRACTICE OF FALSELY CERTIFYING PATIENTS FOR MEDICARE HOSPICE BENEFITS

31. Over the past decade, Vitas Los Angeles knowingly submitted or caused the submission of false claims to Medicare, and created false records and statements to receive reimbursement from Medicare for hospice care. Each of those false certifications cost Medicare at least ten thousand dollars in hospice benefits that should not have been paid.

32. During this time, Vitas falsely certified on claim forms submitted to Medicare that hospice care provided to Medicare recipients was "medically indicated and necessary for the health of the patient." Vitas created and/or submitted documentation that falsely represented that certain Medicare recipients were "terminally ill," meaning that individual has "a medical prognosis that his or her life expectancy is 6 months or less if the illness runs its normal course." Many of the Medicare recipients that Vitas provided hospice care to were ineligible for hospice care paid for by Medicare as they did not have a "medical prognosis of six months or less to live if the illness runs its normal course."

33. As the largest for-profit provider of hospice care in Los Angeles, Vitas is a sophisticated hospice provider that is fully knew and appreciated Medicare statutes, Medicare regulations, the definition of "terminally ill," and the LCDs that set out medical criteria for determining whether individuals with certain diagnoses have a prognosis of six months or less to live.

34. Vitas Los Angeles knew, deliberately ignored, or recklessly disregarded that the claims it submitted to Medicare falsely represented the medical condition and hospice eligibility of the beneficiaries. Furthermore, Vitas Los Angeles knew or recklessly disregarded that its business practices would lead to the submission of false claims to Medicare by providing hospice services to ineligible beneficiaries.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

35.     This pattern and practice of false certification and recertification was engaged in at the direction and control of upper management for the Los Angeles region.  The Vitas Los Angeles management personnel who asserted this direction and control included:

**Belinda Hodges**, Patient Care Administrator for Los Angeles

**Susan Fishenfold**, General Manager for Los Angeles

**Kevin Klein**, Medical Director for Los Angeles

**Sharon Wells**, Team Manager

36.     This direction and control was asserted in various settings.  For example, each week, the Team Managers would meet with each regional team within Los Angeles (there are 10 to 12 regional teams covering Vitas Los Angeles' operations).  During those meetings, if a suggestion was made that a patient no longer qualifies for hospice, the Team Managers (such as Sharon Wells) would fabricate a rationale for keeping the patient on hospice or instruct the Team Doctors to do so.  If there was continued disagreement, the case was referred to Belinda Hodges.  Hodges then applied further pressure on the dissenting team member, and instructed the Team Doctors what to state in the physician notes in order to ensure that the patient continues to qualify for hospice, no matter how untrue.  Notably, neither Wells nor Hodges are doctors.

37.     As to patients for which Wells or Hodges could not easily fabricate a justification for recertification, those patients were sent to the Medical Director Review Committee.  Inevitably, that Committee, headed by Medical Director Kevin Klein, falsely determined that the patient qualified for hospice care, and instructed the Team Doctor to recertify the patient for hospice.  On information and belief, these practices continue.

38.     As a result of these practices, many of Vitas Los Angeles' patients remain on hospice for years, with little or no decline in health, and requiring little in resources from Vitas.  Vitas Los Angeles, meanwhile, continues to collect

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

significant amounts from Medicare for each patient, padding its profits at the expense of taxpayers.

## VI.  **EVIDENCE OF THE SCHEME**

39.    Relator is aware of many patients that Vitas Los Angeles has improperly certified and/or re-certified. Again, under Medicare regulations, in order for an individual to qualify for hospice benefits, a physician must certify that the individual has a terminal illness, and has less than six months to live if the illness runs its normal course. *See* 42 C.F.R. § 418.20. If the patient survives for more than 90 days, in order for the patient to remain on hospice, a physician must re-certify that the patient it terminal, and has less than six month to live. *See* 42 U.S.C. § 1395f(a)(7). Further re-certification must be made every 60 days thereafter. *See id.* The following are some examples of how Defendant Vitas systematically and intentionally falsely certifies large numbers of its patients as eligible for hospice care, when they are not:

40.    Patient J.W. was admitted by Vitas to hospice on March 27, 2008, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still in hospice when Relator left Vitas in May of 2011, three years later. Vitas Los Angeles frequently uses the amorphous diagnosis of "dementia" to falsely certify and re-certify patients who do not have any diagnosis that meets the appropriate criteria.

41.    Patient D.G. was admitted by Vitas to hospice on March 13, 2009, with a diagnosis of dementia. The patient had been discharged for an extended prognosis from another hospice right before she was admitted to Vitas. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still in hospice when Relator left Vitas in May of 2011.

42.    Patient J.P. was admitted by Vitas to hospice on August 29, 2008,

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

with a diagnosis of chronic obstructive pulmonary disease. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still in hospice when Relator left Vitas in May of 2011.

43. Patient E.R. was admitted by Vitas to hospice on October 3, 2009, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still in hospice when Relator left Vitas in May of 2011.

44. Patient S.S. was admitted by Vitas to hospice on October February 13, 2009, with a diagnosis of Friedreichs Ataxia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient was still in hospice when Relator left Vitas in May of 2011.

45. Patient Z.G. was admitted by Vitas to hospice on July 30, 2007, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still in hospice when Relator left Vitas in May of 2011.

46. Patient M.G. was admitted by Vitas to hospice on September 1, 2006. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. The patient died on hospice in 2010, after having received hospice care for over three years.

47. Patient M.W. was admitted by Vitas to hospice on January 15, 2009, with a diagnosis of dementia. Vitas Los Angeles improperly and repeatedly recertified this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient remained on hospice for over two years

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

1   prior to dying in the spring of 2011.

2       48.     Patient B.M. was admitted by Vitas to hospice on August 2, 2010,

3   with a diagnosis of "debility." The patient was still in hospice when the relator

4   left Vitas in May of 2011. Vitas Los Angeles frequently uses the amorphous

5   diagnosis of "debility" to falsely certify and recertify patients who do not have any

6   diagnosis that meets the appropriate criteria. This is one such patient.

7       49.     Patient A.M. was admitted by Vitas to hospice on March 3, 2008,

8   with a diagnosis of debility. Vitas Los Angeles improperly certified, and

9   repeatedly recertified, this patient as qualifying for Medicare hospice benefits,

10  when she did not in fact qualify. As a result, the patient was still in hospice when

11  relator left Vitas in May of 2011.

12      50.     Patient L.H. was admitted by Vitas to hospice on October 6, 2008,

13  with a diagnosis of "failure to thrive." Vitas Los Angeles improperly certified,

14  and repeatedly recertified, this patient as qualifying for Medicare hospice benefits,

15  when she did not in fact qualify. "Failure to thrive" is another amorphous

16  certification used by Vitas to falsely certify and recertify patients for hospice care.

17  The patient died in fall of 2010, after having received hospice care for

18  approximately two years.

19      51.     Patient R.P. was admitted by Vitas to hospice on June 19, 2009, after

20  having suffered a stroke. Vitas Los Angeles improperly certified, and repeatedly

21  recertified, this patient as qualifying for Medicare hospice benefits, when she did

22  not in fact qualify. As a result, the patient was still in hospice when relator left

23  Vitas in May of 2011.

24      52.     Patient R.M. was admitted by Vitas to hospice on May 3, 2010, with a

25  diagnosis of colon cancer. Vitas Los Angeles improperly certified, and repeatedly

26  recertified, this patient as qualifying for Medicare hospice benefits, when he did

27  not in fact qualify. As a result, the patient was still in hospice when relator left

28  Vitas in May of 2011.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

53.     Patient V.G. was admitted by Vitas to hospice on February 7, 2008, with a diagnosis of cardiovascular disease. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. The patient died in the fall of 2010 after having received hospice care for approximately a year and a half.

54.     Patient A.M. was admitted by Vitas to hospice on March 22, 2000. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient stayed on hospice for at least approximately **six years**. He was last seen by Relator on January 23, 2006, in his home.

55.     Patient R.A. was admitted by Vitas to hospice on April 27, 2004, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient stayed on hospice for at least three and a half years. She was last seen by Relator on October 9, 2007, and on information and belief, lived at least one or two more years, on hospice.

56.     Patient A.D. was admitted by Vitas to hospice on April 1, 2004, with a diagnosis of lymphoma. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over three years later. Relator last saw her on June 1, 2007. Relator repeatedly insisted to Vitas Los Angeles' management that she be discharged from hospice. Vitas repeatedly refused. As a result, Relator refused to recertify her, and asked to be taken off of her case. Subsequently, another Vitas Team Doctor continued recertifying the patient, and did so without personally visiting or examining the patient.

57.     Patient F.K. was admitted by Vitas to hospice on October 25, 2005. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as

⊛
LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, two years later, on October 12, 2007, when she was last seen by Relator. On information and belief, she lived for at least one or two more years, still on hospice.

58. Patient J.D. was admitted by Vitas to hospice on October 3, 2005. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over two years later, on October 28, 2007, when she was last seen by Relator. On information and belief, she lived for at least one or two more years, still on hospice.

59. Patient S.A. was admitted by Vitas to hospice on May 25, 2003, with a diagnosis of Dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over two years later, on September 17, 2005, when she was last seen by Relator. She passed away shortly thereafter. This patient is an example of a patient that, while squarely qualified for hospice benefits at the end of her stay, did not qualify at the beginning or middle of her hospice stay. At the very least, Vitas should have discharged her for an extended prognosis after six months to one year. Vitas Los Angeles rarely, if ever, did so with such patients. Vitas Los Angeles' pattern, practice, and policy was to keep all patients on hospice, with the hope that they would eventually decline sufficiently to legitimately qualify for hospice benefits.

60. Patient G.K. was admitted by Vitas to hospice on March 13, 2008. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient lived, still receiving hospice benefits, for at least approximately

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

two years.

61.    Patient V.S. was admitted by Vitas to hospice on December 2, 2006, with a diagnosis of debility. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient lived, still receiving hospice benefits, through at least 2009.

62.    Patient L.L. was admitted by Vitas to hospice on March 5, 2007, with a diagnosis of "failure to thrive." Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient lived, still receiving hospice benefits, through at least 2010.

63.    Patient R.O. was admitted by Vitas to hospice on December 11, 2006, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over two years later, on January 29, 2009, when she was last seen by Relator. In information and belief, she remained alive and on hospice through at least 2010.

64.    Patient H.B. was admitted by Vitas to hospice on January 25, 2008, with a diagnosis of debility. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, almost three years later, on January 7, 2011, when she was last seen by Relator.

65.    Patient R.T. was admitted by Vitas to hospice on December 16, 2007, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient was still alive, and still

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

COMPLAINT
Case 4:13-cv-00344-BCW   Document 19-2   Filed 04/04/13   Page 18 of 29

14

receiving hospice benefits, over two years later, on January 7, 2011, when he was last seen by Relator.

66. Plaintiff J.S. was admitted by Vitas to hospice on August 8, 2008, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over two years later, on January 11, 2011, when he was last seen by Relator.

67. Patient L.B. was admitted by Vitas to hospice on August 9, 2007, with a diagnosis of debility. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over three years later, on January 14, 2011, when she was last seen by Relator.

68. Patient R.M. was admitted by Vitas to hospice on March 31, 2009, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over two years later, in May 2011.

69. Patient E.R. was admitted by Vitas to hospice on November 13, 2006. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient was still alive, and still receiving hospice benefits, over four and a half years later, when Relator left Vitas in May of 2011.

70. Patient A.Z. was admitted by Vitas to hospice on April 11, 2008, with a diagnosis of debility. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient was still alive, and still receiving

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

hospice benefits, over two years later, in May 2010, when he was seen by Relator.

71.     Patient R.C. was admitted by Vitas to hospice on January 12, 2007, with a diagnosis of "adult failure to thrive." Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient received approximately three years of hospice benefits before passing away.

72.     Patient G.B. was admitted by Vitas to hospice on June 8, 2004, with a diagnosis of dementia. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when he did not in fact qualify. As a result, the patient received approximately **six years** of hospice benefits before passing away.

73.     Patient R.K. was admitted by Vitas to hospice on November 13, 2008, with a diagnosis of Parkinsons. Vitas Los Angeles improperly certified, and repeatedly recertified, this patient as qualifying for Medicare hospice benefits, when she did not in fact qualify. As a result, the patient was still receiving hospice benefits two and a half years later, when Relator left Vitas.

74.     The hospice stay of the above patients averages approximately two years and seven months. Each patient thus had to be certified and recertified by Vitas Los Angeles an average of at least fourteen (14) times. Thus for just these thirty-four examples, Vitas Los Angeles submitted approximately 476 false certifications or recertifications. Each of those false certifications or recertifications cost Medicare – and therefore taxpayers – at least ten thousand dollars.

/ / /

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

# VII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### On Behalf of the United States

### Federal False Claims Act, Presenting False Claims

### 31 U.S.C. § 3729(a)(1)(A)

75.   Plaintiff incorporates herein by reference and realleges the allegations stated in Paragraphs 1 through 74, inclusive, of this Complaint.

76.   Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

77.   Defendants knowingly presented false records and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare program for hospice services for patients who were not eligible for Medicare hospice benefits during all or part of the time.

78.   The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

## SECOND CAUSE OF ACTION

### On Behalf of the United States

### Federal False Claims Act, Making or Using False Records or Statements

### Material to Payment or Approval of False Claims

### 31 U.S.C. § 3729(a)(1)(B)

79.   Plaintiff incorporates herein by reference and realleges the allegations stated in Paragraphs 1 through 74, inclusive, of this Complaint.

80.   Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

81. Defendants knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare program for hospice services for patients who were not eligible for Medicare hospice benefits during all or part of the time.

82. The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

## THIRD CAUSE OF ACTION

### (In the Alternative)

### On Behalf of the United States

### Federal False Claims Act, Retention of Proceeds to Which Not Entitled

### 31 U.S.C. § 3729(a)(1)(G)

83. Plaintiff incorporates herein by reference and reallege the allegations stated in Paragraphs 1 through 74, inclusive, of this Complaint.

84. In the alternative, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

85. As discussed above, Defendants received far more money from the Medicare programs than they were entitled to. Defendants knew that they had received more money than they were entitled to, and avoided their obligation to return the excess money to the Government.

86. The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

# VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, by and through the Relator, prays judgment in its favor and against Defendants as follows:

1.    That judgment be entered in favor of Plaintiff UNITED STATES OF AMERICA *ex rel.* CHARLES GONZALES, and against Defendants VITAS HEALTHCARE CORPORATION and VITAS HEALTHCARE CORPORATION OF CALIFORNIA, according to proof, as follows:

    a.    On the First Cause of Action (Presenting False Claims (31 U.S.C. § 3729(a)(1)(A))) damages as provided by 31 U.S.C. § 3729(a)(1), in the amount of:

        i.    Triple the amount of damages sustained by the Government;

        ii.   Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

        iii.  Recovery of costs, attorneys' fees, and expenses;

        iv.   Pre- and post-judgment interest;

        v.    Such other and further relief as the Court deems just and proper;

    b.    On the Second Cause of Action (False Claims Act; Making or Using False Records or Statements Material to Payment or Approval of False Claims (31 U.S.C. § 3729(a)(1)(B))) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

        i.    Triple the amount of damages sustained by the Government;

        ii.   Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

        iii.  Recovery of costs, attorneys' fees, and expenses;

        iv.   Pre- and post-judgment interest;

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

COMPLAINT

v.     Such other and further relief as the Court deems just and proper; and

c.     On the Third Cause of Action (False Claims Act, Retention of Proceeds to Which Not Entitled (31 U.S.C. § 3729(a)(1)(G))) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

i.     Triple the amount of damages sustained by the Government;

ii.    Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

iii.   Recovery of costs, attorneys' fees, and expenses;

iv.    Pre- and post-judgment interest;

v.     Such other and further relief as the Court deems just and proper.

2.     Further, Relator, on his own behalf, requests that he receive such maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the United States, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. Relator requests that his percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

Dated:  January 26, 2012         **COTCHETT, PITRE & McCARTHY, LLP**

By: _____
NIALL P. McCARTHY
JUSTIN T. BERGER
ERIC J. BUESCHER
*Attorneys for Relator*

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

# DEMAND FOR JURY TRIAL

On behalf of Plaintiff United States of America, Relator CHARLES GONZALES hereby demands a jury trial on all issues so triable.

Dated: January 26, 2012

**COTCHETT, PITRE & McCARTHY, LLP**

By:

NIALL P. McCARTHY
JUSTIN T. BERGER
ERIC J. BUESCHER
*Attorneys for Relator*

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA ex rel. CHARLES GONZALES | VITAS HEALTHCARE CORPORATION, a Florida corporation; and VITAS HEALTHCARE CORPORATION OF CALIFORNIA, a California corporation |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| COTCHETT, PITRE & McCARTHY, LLP<br>840 Malcolm Road, Burlingame, CA 94010<br>Telephone: (650) 697-6000 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ To be determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 USC § 3729 et seq., violation of the Federal False Claims Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | **IMMIGRATION** | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV12 0761

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

Case 4:13-cv-00344-BCW   Document 19-2   Filed 04/04/13   Page 26 of 29

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Florida |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____ Date January 26, 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Case 4:13-cv-00344-BCW   Document 19-2   Filed 04/04/13   Page 27 of 29

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV12- 761 R (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

=======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA ex rel.
CHARLES GONZALES,

FOR OFFICE USE ONLY

PLAINTIFF(S)

v.

VITAS HEALTHCARE CORPORATION,
a Florida corporation; and VITAS HEALTHCARE
CORPORATION OF CALIFORNIA, a California
corporation,

DEFENDANT(S).

CASE NUMBER

CV 12 0761 -ℛ (PLₓ)

**SUMMONS**

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Justin Berger _____, whose address is Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, CA 94010 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___JAN 27 2012___    By: ___MARSHA DAVIS___

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)      **SUMMONS**